IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Action No. 7:15-cr-00064-001 |
| v. | ) | |
| | ) | |
| HASSAN RASOOL WILLIAMS | ) | By:  Elizabeth K. Dillon |
| | ) | United States District Judge |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

On October 26, 2020, Hassan Rasool Williams, represented by counsel, filed a motion for compassionate release.  (Dkt. No. 205.)  The matter is fully briefed and ready for decision.  For the reasons stated below, Williams' motion will be denied.  Williams' recent motion requesting a ruling (Dkt. No. 225) will be granted by the issuance of this ruling.

I.  BACKGROUND

Williams had significant involvement in a drug distribution conspiracy from March 2013 through July 2015.  Williams pled guilty to one count of conspiring to distribute more than 1,000 but less than 3,000 grams of heroin with a base offense level of 30.  (Dkt. No. 130.)  He also agreed to a two-level enhancement for being a leader, manager, or organizer.  Williams and his co-defendant Andrews led a heroin distribution network that obtained large amounts of heroin from New Jersey and brought it to Virginia where they had lower-level distributors selling the drugs and returning the money to Williams.  The PSR attributes a conservative 5.6 kg of heroin to Williams.  (Presentence Report (PSR) ¶ 17, Dkt. No. 173.)  Moreover, an inundation of overdoses in May 2015 was linked to drug packages distributed by three distributors who worked for Williams and Andrews.  (*Id*. at ¶ 18.)

While the parties did not believe that Williams would qualify as a career offender at the time of his plea, he was a career offender because of a conviction for distributing drugs near a school and a conviction for possession with the intent to distribute drugs on or near school property. Based on a total offense level of 34 and a criminal history category of VI (even without the career offender status), the guideline range was 262–327 months. (*Id*. at ¶ 101.) On October 4, 2016, Williams was sentenced to 151 months imprisonment. (Dkt. No. 170.) The court varied downward significantly to avoid an unwarranted sentencing disparity with co-defendant Andrews and because the government represented that it would have entered into a different plea agreement had it known that Williams would qualify as a career offender. Williams' projected release date is June 10, 2026.[1]

Williams seeks compassionate release because of the COVID-19 outbreak at FCI-Bennettsville and his serious health problems, including obesity, hypertension, severe and complex sleep apnea, prediabetes, and osteoarthritis, that make him more susceptible to COVID-19. Williams, however, is no longer housed at FCI-Bennettsville and is housed at FCI-McDowell.[2] On October 26, 2021, the Bureau of Prisons was reporting no COVID-19 positive inmates and no positive staff members at McDowell.[3]

II.  ANALYSIS

A. Compassionate Release Under the First Step Act

United States Code Title 18, Section 3582(c)(1)(A), as amended by the First Step Act and in pertinent part, provides that the court may not modify a term of imprisonment once it has been imposed except that:

---

[1] *See* https://www.bop.gov/inmateloc/ (last visited Oct. 26, 2021).
[2] *See* https://www.bop.gov/inmateloc/ (last visited Oct. 26, 2021).
[3] *See* https://www.bop.gov/coronavirus/ (last visited Oct. 26, 2021).

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

In addition to satisfying the above, the court must consider the applicable factors set forth in section 3553(a) and the reduction must be "consistent with [the] applicable policy statement issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). However, "the Commission has yet to issue a policy statement that applies to motions filed by defendants [rather than motions filed by BOP] under the recently amended § 3582(c)(1)(A)." *United States v. Burnell*, 837 F. App'x 223, 224 (4th Cir. 2021) (quoting *United States v. McCoy*, 981 F.3d 271, 280–83 (4th Cir. 2020)). Therefore, a court may "consider *any* extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284. While the Sentencing Commission Policy Statement in section 1B1.13 is not dispositive, it "remains helpful guidance," *id*. at 282 n.7.

Because section 1B1.13 provides guidance and the Fourth Circuit has noted that it provides examples and, at least in the medical context, defines "the same substantive term that applies to BOP-filed motions," *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), the court notes the guidance from that section. Section 1B1.13, regarding medical conditions, notes terminal illness and conditions from which a defendant is not expected to recover that substantially diminish defendant's ability to care for himself in a correctional facility (including

3

serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process).  Of course, this guidance is not controlling.

"A defendant seeking compassionate release has the burden of establishing that such relief is warranted."  *United States v. Weaver*, No. 1:17-CR-235, 2020 WL 4810123 (E.D. Va. Aug. 18, 2020) (citing *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56-57 (2005) (defendant bears burden as party seeking relief absent statutory guidance to the contrary)).  Compassionate release is "an extraordinary and rare event."  *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).  Rehabilitation, standing alone, "shall not be considered an extraordinary and compelling reason" for a sentence modification.  28 U.S.C. § 994(t).

**B. Exhaustion**

As noted above, while the First Step Act changed § 3582(c)(1)(A) to allow a prisoner to bring a motion on his or her own behalf, the statute still includes an exhaustion requirement. Williams requested compassionate release from the warden, and his request was denied on May 12, 2020.  (Dkt. No. 214.)  There is no indication that he appealed that decision.

Pursuant to the exhaustion requirement, an inmate is required to either fully exhaust all administrative remedies or show the lapse of 30 days from receipt of the request by the warden, whichever is earlier.  18 U.S.C. § 3582(c)(1)(A).  Under the first condition, if the warden denies the request within 30 days, the inmate then must exhaust his or her administrative remedies.  The second method of exhaustion is only available if the warden fails to respond within 30 days.  *See, e.g., United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *United States v. Gomez*, No. 1:17CR71-1, 2021 WL 3612269 *2 (N.D. W. Va. Aug. 13, 2021); *United States v. Jones*, No.

4

5:13-cr-00025, 2021 WL 32883555 *2 (W.D. Va. Aug. 2, 2021).  The government may waive this requirement, but it has not done so here.

Despite the failure to show compliance with the exhaustion requirements, the court would deny the motion based on the sentencing factors.

### C. Extraordinary and Compelling Reasons

The fact that COVID-19 exists and that there is a possibility that someone may contract it in a prison is insufficient, in and of itself, to grant a motion for compassionate release.  See *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  Rather, in the context of COVID-19,

> the threshold questions are whether [the inmate] has a particularized risk of contracting COVID-19 in prison and whether his medical conditions render him particularly susceptible to severe illness or death should he contract the virus.  *See High*, 997 F.3d at 185 (explaining that arguments for compassionate release "based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19").

*United States v. Youngblood*, 858 F. App'x 96, 98 (4th Cir. 2021).

The government agrees with Williams that at least one of Williams' health conditions (obesity) combined with the COVID-19 pandemic, as it then existed at FCI-Bennettsville, presents an extraordinary and compelling reason for compassionate release.  The court need not address this issue or the COVID-19 status at McDowell because, for the reasons set forth in the next section, the sentencing factors under § 3553(a) do not favor release.

### D. Section 3553(a) Factors

Even if the court were to find exhaustion of administrative remedies and extraordinary and compelling reasons existed, the court would nonetheless exercise its discretion to deny the motion based on the sentencing factors.  The factors to consider under § 3553(a) are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . .

The government notes the seriousness of Williams' offense—trafficking distribution amounts of a dangerous narcotic—along with Williams' lengthy criminal history, arguing that Williams should not be released in order to protect the public from further crimes and to reflect the seriousness of the crimes committed by Williams. Over the course of his lengthy criminal history, Williams has accumulated fourteen criminal history points, including for drug or gun offenses, and the BOP classifies Williams as having a high risk of recidivism. Also, Williams has almost five years remaining on his sentence. In addition to undermining the seriousness of Williams' crime, reducing his sentence to time served would undermine respect for the law and would not provide adequate deterrence.

Williams does not specifically mention the § 3553(a) factors in his briefing to the court. Rather, he mentions that the government may argue that he has too much time left on his sentence to be considered. In response, Williams provides an incredibly lengthy string citation to district court cases allowing compassionate release due to COVID-19 "even when the percentage of time served was relatively low." (Def.'s Mem. 12–15, Dkt. No. 205.) The same approach is

taken in the brief regarding violent offenders even though Williams asserts that he poses no particular risk of violence. (*Id*. at 15–16.)  The low percentage of time served is only one factor that supports continued detention under § 3553(a).  The significance of other prisoners being released having served a lower percentage of time than Williams, without any factual background, approaches zero when considering the § 3553(a)'s multifactor analysis.  The same is true regarding the string cite involving violent offenders.  No cases that are analogous to Williams' circumstances are called to the court's attention.

The undersigned was the sentencing judge in this case and notes the seriousness of Williams' offense.  For over two years, Williams brought large amounts of heroin, a very dangerous drug, into the community and was a leader in a distribution network linked to overdoses.  His history and characteristics are generally negative given his accumulation of 14 criminal history points, putting him in a criminal history category of VI even without his career offender status.  He began his life of crime at age 15 and has prior convictions involving drug distribution (including near schools), weapons, and aggravated assault involving a gunshot wound to another person with whom he was verbally fighting.  Williams has shown continued disrespect for the law and a willingness to continue to commit crimes.  He has been a danger to the communities in which he has lived and distributed drugs, especially given his proclivity to distribute drugs near schools.

Given the sentencing factors, including Williams' risk of recidivating given his history and the lack of any presentation of evidence regarding rehabilitation, there is a continued need to promote respect for the law and to punish and deter Williams.  The motion for compassionate release will be denied.

## III.  CONCLUSION

Based on the foregoing, it is HEREBY ORDERED that Williams' motion for compassionate release (Dkt. No. 205) is DENIED.  His motion requesting a ruling (Dkt. No. 225) is GRANTED by the issuance of this ruling.

The clerk is directed to provide a copy of this memorandum opinion and order to the defendant, all counsel of record, and the United States Probation Office.

Entered: October 26, 2021.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge